**Florencio Soto CRESPO,**
**Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH, EDUCA-**
**TION AND WELFARE,**
**Defendant-Appellee.**

**No. 78–1186.**

United States Court of Appeals,
First Circuit.

Submitted Dec. 6, 1978.

Decided Jan. 24, 1979.

Julio Morales Sanchez, U. S. Atty., San Juan, P. R., William Kanter, Atty., Dept. of Justice, Washington, D. C., Borge Varmer, Regional Atty., and Barry J. Reiber, Asst. Regional Atty., Dept. of Health, Education and Welfare, New York City, on brief for defendant-appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal from a decision of the District Court of Puerto Rico upholding the Secretary's denial of appellant's application for disability insurance benefits.[1] We review the record to determine if there is substantial evidence[2] to support the Secretary's finding that, "Considering the claimant's residual capacity and his vocational background he is able to perform jobs which are present in significant numbers in the area where he currently lives including such jobs as watchman, porter, and gas station attendant."

Appellant was born in Hatillo, Puerto Rico, on January 3, 1934, and received nine years of formal education. He then moved to Brooklyn, New York, and thereafter

---

1. The Appeals Council upheld the hearing decision of the A.L.J. without an opinion, which made the hearing decision the final decision of the Secretary.

2. Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

lived in the New York area and also in Chicago working as a welder and as an operator of power and punch presses. On November 27, 1974, while operating a drill press in Nyack, New York, he incurred a severe crush injury to the fingers of his right hand resulting in the traumatic amputation of the middle, ring, and little fingers and of the distal phalanx of the right index finger. His right hand is now a stump without fingers except for the thumb and a portion of the index finger.

Appellant returned to his native land in March of 1975, shortly after the medical treatment of his hand was completed. The medical records disclose that appellant exhibited an emotional reaction to his injury shortly after his admission to the hospital. The records of the Helen Hayes Hospital in Haverstraw, New York, state that he "has a very strong hysterical element to his disease," and give anxiety neurosis as one of the admission impressions. Appellant's mental and emotional condition continued to deteriorate after the treatment of his hand was completed, so the real question is whether appellant is disabled due to a mental impairment under 42 U.S.C. § 423(d)(1)(A) which defines disability as

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . . .

Subsection (3) of this section of the Act states:

> For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

Two psychiatric examinations were made of appellant, both at the initiative of the Secretary. Dr. J. A. Mojica Sandoz examined appellant on February 27, 1976. His prognosis was that appellant had a chronic anxiety neurosis, that his mental ability for establishing interpersonal relations and tolerating criticism was slightly impaired, that he could not tolerate work pressure or adjust to a competitive long-lasting work situation and that the "laboral" [sic] prognosis was guarded. He also found that appellant was mentally competent to handle his funds in an adequate rational manner. It was Dr. Mojica Sandoz's opinion that appellant's condition was due to lack of adequate treatment and he recommended psychiatric treatment, which recommendation evidently was not followed.

If this were the only psychiatric report, we might have difficulty in sustaining the findings of the Secretary, particularly in view of the ambivalent testimony of the vocational expert. However, at the hearing before the A.L.J. at which appellant was present and testified, the A.L.J. decided that another psychiatric examination was necessary. This was done by Dr. Rodriguez-Gomez on June 19, 1976. He found no evidence of personality disorganization, but some mild evidence of deterioration. Dr. Rodriguez-Gomez also found that appellant was able to take care of his needs and to manage funds. In his report, Dr. Rodriguez-Gomez specifically stated: "I find no definite *psychiatric* impairment to *fully* incapacitate this claimant from engaging in productive labor." Dr. Rodriguez-Gomez also suggested an orthopedic evaluation to determine the functional capability of appellant's right hand.[3]

While Dr. Mojica Sandoz's report is more guarded than that of Dr. Rodriguez-Gomez's, it clearly does not compel a finding of a disabling mental impairment within the meaning of the Act. In any event, we are bound to give deference to the Secretary's evaluation of the medical evidence. *Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Gonzalez*

---

**3.** There is no evidence in the record that any attempt was made to fit appellant with and train him in the use of a prosthesis. This may have been due to appellant's attitude. At the hearing, the vocational expert told appellant that he could get an artificial hand. His response was emphatic. "I don't want artificial fingers. No, that make me sick."

*v. Richardson,* 455 F.2d 953, 954 (1st Cir. 1972). It was, of course, well within the A.L.J.'s prerogative to consider and rely on the report of Dr. Rodriguez-Gomez, even though it was not submitted until after the hearing. *Richardson v. Perales, supra.*

Based on the report of Dr. Rodriguez-Gomez and that portion of the vocational expert's testimony in which he testified that there were jobs in the community of a light or sedentary nature which appellant could perform using primarily his left hand, we find that the decision of the Secretary was based on substantial evidence.

*Affirmed.*